## Case No. 15,891.

### UNITED STATES v. NINETY-FIVE BOXES, ETC.

### SAME v. TWO HUNDRED AND THIRTY-EIGHT BOXES, ETC.

[19 Int. Rev. Rec. 101.]

District Court, D. New Jersey. March 21, 1874.

CUSTOMS DUTIES — ENTRIES AS PASSENGERS' BAGGAGE—FORFEITURES.

Where dutiable merchandise was imported as passengers' baggage, but no attempt was made by the owners and consignees to have it passed as such, and the owner, without knowledge of the seizure by the officers of customs, offered the goods, with correct bills of lading and moneys, for entry at the custom house, *held*, that such goods were not forfeitable either under the 50th section of the act of March 2, 1799 [1 Stat. 665], the 1st section of the act of March 3, 1863 [12 Stat. 742], or the 4th section of the act of July 18, 1866 [14 Stat. 179].

A. Q. Keasbey, U. S. Dist. Atty.

Stanley, Brown & Clarke, for claimants.

NIXON, District Judge. The claimants, the principles involved, and the facts, in the two cases above stated are substantially the same. The goods described in the informations were seized by the collector of customs of New York, at Hoboken, in this district, and informations were filed claiming their forfeiture under section 50 of the act of March 2, 1799, section 1 of the act of March 3, 1863, and section 4 of the act of July 18, 1866. Sacks & Herzberg, merchants and importers, doing business in New York, put in claims and duly filed answers to the informations. On the trial of the first stated case, the result of which, by consent of counsel, was to determine the second, no question was raised, in regard to the facts, and the court directed a verdict for the government, subject to the opinion of the court upon the questions of law; and also requested the jury to find specially whether or not the claimants were guilty of intentional fraud, and design to evade the payment of duties. This was done for the information of the secretary of the treasury, if the case should afterwards come before him on application in behalf of the claimants for remission of the forfeiture. A general verdict for the government was found, as directed, but the jury failed to agree upon the question of fraud.

The facts in the two cases are substantially as follows: The goods in question were owned by the claimants, Sacks & Herzberg, importers of dress trimmings in New York; one member of the firm, Sacks, residing in New York, and the other, Herzberg, in Berlin. They had been in the habit of importing goods from Hamburg, which were shipped from time to time by their agents in that city. Morris L. Sacks, father of one of the claimants, was in Germany in the winter of 1872-3, visiting his relatives, and when about to return to this country, in the month of February, received a letter from his son requesting him to go to the shipping agent of the firm in Hamburg, and ascertain whether there were any goods prepared for transportation, and, if so, to bring them with him. He did so, and found two cases of goods ready for shipment. They were put on board the Frisia by their agent, and marked "personal luggage" of Mr. Sacks, the elder, who had taken passage in that steamer. The reason assigned for so marking the cases was to save, in part, the costs of transportation. Each passenger was allowed by the steamship company a certain number of cubic feet for his baggage, and, as he had little of his own, he would be obliged to pay on this merchandise only for the space occupied by it in excess of the usual allowance for baggage. The Frisia was to sail on the 19th of February. On the 18th, Mr. Sacks, in consequence of sickness, found that he was unable to go on board, and endeavored to have the goods withdrawn from the steamer, but was unsuccessful, in consequence of their being stowed in the hold of the vessel. They came over among the personal baggage of the steamer; were not entered in the ship's manifest; were landed on the wharf at Hoboken, with the passengers' baggage under the general permit granted by the collector for that purpose, and no one claiming them, they were seized by the officers of the customs, and sent to the seizure room for forfeiture. Mr. Sacks, the elder, sailed a week later in the Westphalia. Four other cases were then ready for shipment, and were taken by him on board, and marked as, and deposited with, the personal baggage. They were put upon the manifest of the ship as passengers' baggage, and not as merchandise, and on the arrival of the steamer in Jersey City were landed upon the dock for examination under the permit to remove personal baggage, where, as in the other case, they were seized. None of the cases contained anything except merchandise, subject to duties.

Upon this state of facts, it is insisted by the district attorney in behalf of the United States, that the mode of importation was an experiment by the parties, to ascertain whether the payment of duties could be avoided by inducing the officers of customs to allow the goods to pass without inspection, as passengers' baggage exempt from duty, and ultimately intending to pay the duties if payment should be demanded, and he claims that the goods are forfeited under the 50th section of the act of March 2, 1799, and also under the 1st section of the act of March 3, 1863, and the 4th section of the act of July 18, 1866.

The facts place the case before me, so clearly outside of the provisions of the sections of the two last recited statutes, that I shall not stop to particularly consider them. The penalty of forfeiture authorized by the first section of the act of 1863, refers to frauds or attempted frauds in regard to the

entry of goods by the owner, consignee, or agent; and is only incurred by some overt act, after their importation, in respect to their entry at the custom house for the payment of duties. The alleged unlawful or fraudulent practices here complained of were in connection with the importation and not the entry of the goods, which are quite distinct matters. The importation is complete before the time for entry begins. Waring v. Mayor, 8 Wall. [75 U. S.] 118; Act 1799, § 36. The goods were seized before an entry was attempted to be made. The 4th section of the act of 1866 prescribes the penalty of forfeiture in cases of the fraudulent importation of goods contrary to law, and as was held by the late Judge Hall in U. S. v. Thomas [Case No. 16,473], refers not to the importation of dutiable goods without the payment of duties, but to the bringing in either of special articles whose importation is wholly prohibited or of merchandise admitted under certain circumstances and subject to duty, or forbidden under others, as for instance importing cigars in boxes containing more than five hundred and brandy or other spirituous liquors in casks of a capacity less than thirty gallons. It is for the wisdom of the legislature to impose these prohibitions and restrictions in its discretion, and the importing of such articles in any other than the prescribed mode might be deemed an importation contrary to law. But it is not as a general rule against the law to import or bring into the United States goods subject to duty without first paying or securing the duties, for nothing is due or payable thereon until after the importation has taken place, and the necessary entries have been made and the duties ascertained.

We are then brought to the single question whether these, goods are liable to forfeiture under the provision of the 50th section of the collection act of 1799. The prohibition of the section is that, "no goods, wares, or merchandise, brought in any ship or vessel from any foreign port or place, shall be unladen or delivered from such ship or vessel within the United States, but in open day; nor at any time without a permit from the collector and naval officer, if any, for such unlading or delivery." The goods in controversy were taken from the steamer and placed upon the dock for examination under permits, from the collector and naval officer to examine personal baggage. These permits were issued by virtue of the 46th section of the collection act, which provides "that whenever the collector and naval officer, if any, shall think proper, so to do, they may and are hereby authorized in lieu of the provisions and directions before mentioned" (in reference to the entry of personal baggage by the owner and in his behalf), "to direct the baggage of any person arriving within the United States to be examined by the surveyor of the port or an inspector of the customs, and to make a return of the same, and if

any articles shall be contained therein, which in their opinion ought not to be exempted from duty, according to the true intent and meaning of this act, due entry shall be made therefor and the duties thereon paid or secured to be paid; and provides, that whenever any article or articles subject to duty shall be found in the baggage of any person arriving within the United States, which shall not at the time of making entry for such baggage be mentioned to the collector before whom such entry is made by the person making the same, all such articles shall be forfeited," etc. These provisions are intelligible and require the officers making the examination to pass the person baggage, and to hold all goods, not falling properly within the designation, for entry and payment of duties, and they authorize the seizure and forfeiture of those articles only which are found to be withheld from the collector when the entry is made.

It was in proof, that for many years past no examination of passengers' baggage has taken place on shipboard; that it has been the custom, on account of the practical inconveniences of making a proper examination in the hold of the vessel, to have everything imported as personal baggage, placed on the dock where it remains under the inspection and control of the officers until examined and passed by them; that the inspector of customs directs the removal from the ship to the dock by virtue of the permits of the collector and naval officer, authorizing the examination, and that it is made solely to facilitate such examination. The permits in this case, of which the following are copies, were produced and admitted: The naval officer says: "The inspector on board the steamship Frisia from Hamburg, will examine the baggage of all the passengers, and if nothing be found but personal baggage, permit the same to be landed and send all other articles not permitted in due time to the public store." The collector's general order is substantially the same: "The inspector on board the steamer Frisia, E. Mier, master, from Hamburg and Havre, will send to the public store No. ——— Hoboken stores, all packages when landed, and for which no permit or order shall have been received by him contrary to this direction, except perishable articles, gunpowder and explosive substances, not permitted for consumption, which you will retain on board and send notice of to this office. The usual weighing, gauging and measuring to be done before sending goods under this order." These authorize the examination of the baggage by the inspector according to the proviso of the 46th section above mentioned, and direct all articles or packages not falling within the description of personal baggage to be sent to the public stores for entry and the payment of duties.

It is claimed on behalf of the government that the removal of the goods which came as personal baggage, but which, in fact, were

not personal baggage. from the ship to the dock, for the special and only purpose of examination, was such an unloading or delivery of the articles from the vessel. as to bring them within the forfeiture of the 50th section. This would seem to be a harsh and strained construction of the act. The goods are in the possession and under the sole direction of the officers. They are removed to a portion of the dock assigned for the purpose by his order and for his convenience, and remain as fully under his control there as in any part of the ship; and in view of the special object of the transfer, it does no violence to language to hold that no unlading or delivery has taken place, and that, constructively, they are still on board of the vessel. If such removal, in itself. subject the goods to seizure and forfeiture under this section, then the other penalties of the section may be enforced, and the master of the ship and all other persons—including the inspectors that order and superintend the transfer—who are knowingly concerned or aiding therein, forfeit and become liable each to pay for every offence the sum of four hundred dollars. and are disabled from holding any office of trust or profit. under the United States, for a term not exceeding seven years; and when the value of the goods amounts to four hundred dollars, the vessel. her tackle, apparel, and furniture are subject to like seizure and forfeiture. I do not say that such results. however startling and severe, should deter the court from enforcing the plain provisions of a statute; but they are properly adverted to, and entitled to weight, in cases like the present, involving construction. This interpretation of the laws is in harmony with the practice of the government, and is confirmed by the rulings of its officers for many years past, and, so far as it appears, from the beginning.

The counsel for the claimants put in evidence the printed instructions of the surveyor of the port to the inspectors. from which I make the following extracts bearing upon the case: "It is expressly enjoined on officers of the customs that they must be careful that, while no unnecessary delay or needless embarrassment is occasioned, proper scrutiny must be made to detect and report for entry and payment of duties or security therefor, in pursuance of law, all articles found among the baggage liable to duty. They are cautioned, however, that the prime object of their labor is to secure the duties of the United States, and that they are to avoid making seizure of baggage because of the presence of dutiable articles, unless the intention of fraudulent importation is evident." "In the absence of the entry clerk or appraiser, dutiable articles, taken from passengers' baggage, will be sent by the inspector, as soon as possible, to the appraiser's stores. and the passenger will be furnished by the inspector with the usual baggage certificate." "Baggage agents and all other persons (without the permission of the surveyor) will be excluded

from the vessel and from so much of the dock as is used for examining the baggage, until the examination of all the baggage is completed." "The inspector stationed at the gate on the arrival of a steamer must not allow any trunk or package to be removed from the dock unless it is properly passed and checked by the examining inspector. All baggage remaining on the vessel or dock not claimed within a reasonable time by any passenger, must be sent by the inspector to the public store designated in the general order."

The counsel also read in evidence from the printed regulation of the treasury department, issued by the secretary, as follows: "It is expressly enjoined on officers of the customs that they must be careful that. while no unnecessary delay or needless embarrassment is occasioned, proper scrutiny must be made to detect and report for entry and payment of duties or security therefor, in pursuance of law, all articles found among the baggage liable to duty. They are cautioned, however, that the prime object of their labor is to secure the duties due to the United States, and that they are to avoid making seizures of baggage, because of the presence of dutiable articles, unless the intention of fraudulent importation is evident." "Should any passengers' baggage contain dutiable articles to the value of five hundred dollars, it will be sent to the appraiser's store for regular entry and appraisement, as provided by law." It is submitted, in passing, that if the officer had obeyed these plain instructions in the case, and sent the goods to the public store instead of the seizure room, no fraud upon the revenue could possibly have been committed, and the present controversy would not have arisen. The claimants were advised by letter of the shipment. A bill of lading was sent, and invoice in triplicate regularly made and forwarded, according to the act of 1863, and they received their first knowledge of the seizure of the goods when they went to the custom house with the bill of lading and invoice, for the purpose of entry and payment of the duties. The following letter of the secretary of the treasury to the collector of the port of New York, in reference to the seizure of goods belonging to one Levi, made May 8, 1873, was also exhibited, to show the construction which the highest officer of the department has given to the law: "Washington, June 10, 1873. Sir: Your letter of the 23d ultimo is at hand, reporting on the application of M. B. Levi for release of certain new wearing apparel, seized for the reason as reported by the seizing officer—that they were landed as passengers' baggage, and found to be merchandise not on the ship's manifest. The department is unable to see any ground for the seizure in the reason assigned; only goods belonging or consigned to the master, mate, officers, or crew of a vessel are liable to forfeiture when omitted from the manifest, and dutiable goods, found in baggage, are forfeitable only when regular entry has been

made in the manner prescribed in section 46, act of March 2, 1799; and such dutiable goods have not been mentioned to the collector at the time of making the entry. As it does not appear that Mr. Levi was an employee of the vessel, or that he made a sworn entry of baggage, it is the opinion of the department that the property should be considered as detained for duty, and not as seized." This is not quoted, of course, as an authority or rule of decision for the court, but to reveal the fact that the mode of procedure of the subordinate officers in this case is not in accordance with the views of their superior.

I have given to the questions involved a careful consideration, because a different construction of the act was most ably and earnestly pressed by the district attorney, and because the result at which I have arrived differs, as I learn, from U. S. v. Three Cases, etc. [Case No. 16,498], from a number of decisions of Judge Blatchford, whose judgment in such matters is entitled to great weight. For this reason, and because serious doubts existed respecting the interpretation of the law, under the peculiar circumstances of the case I shall give a certificate of reasonable cause.

The method of importation adopted by the claimant is exceptional, and is not to be encouraged. It is liable to suggest to the subordinate officers of the customs, suspicions and intentions to defraud when no such intentions were in the mind of the parties. I find none in the facts of the present case, but if I did, it must be remembered that the law does not punish intentions, but attempts to evade its provisions. The verdict must be set aside, and judgment in both cases be entered for the claimants.